# MARAZZANI v. UNITED STATES FUEL CO.

No. 3996.   Decided September 12, 1924.   Rehearing denied March 23, 1925.   (234 P. 531.)

1.   HIGHWAYS—EVIDENCE HELD NOT TO SUSTAIN FINDING THAT LOCATION OF ROAD AS CLAIMED BY PLAINTIFF OVER DEFENDANT'S LAND WAS EVER DEDICATED AS PUBLIC HIGHWAY.   In suit to enjoin defendant from obstructing public road, evidence *held* not to sustain finding that location of road as claimed by plaintiff over defendant's land was ever dedicated as public highway, either under the common law or under Comp. Laws 1917, § 2801.

On Petition for Rehearing.

2.   APPEAL AND ERROR—QUESTION NOT BEFORE SUPREME COURT FOR REVIEW CANNOT BE DETERMINED.   Where, under pleadings, in suit to enjoin obstruction of road, there was no contention that any public road was obstructed other than road contended

--------

*Headnote 1.   29 C. J. p. 631.
Headnote 2.   4 C. J. p. 644.

for by plaintiff, it would be going beyond the pleadings as well as evidence to pass on question of existence of public road at some other place.

GIDEON, J., dissenting.

Appeal from District Court, Seventh District, Carbon County; *F. E. Woods,* Judge.

Action by Bartola Marazzani against the United States Fuel Company. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*C. W. Morse* and *Marshall, Macmillan & Crow,* all of Salt Lake City, for respondent.

HANSEN, District Judge.

This is an action brought by the plaintiff, Bartola Marazzani, against the defendant, United States Fuel Company, a corporation, to restrain it from obstructing a highway across defendant's land, and to require the defendant to remove obstructions placed across the highway, and to enjoin the defendant from interfering with the free and open use of said highway across defendant's land, and also for damages alleged to have been suffered by the plaintiff on account of the obstruction of said highway.

The principal issue raised by the pleadings of the respective parties and to be determined is whether or not a public road existed across defendant's lands at the time and place when and where the same was obstructed. The plaintiff contends that such a public highway did exist, while the defendant denies its existence. A trial was had to the court sitting without a jury, and the court found the issues in favor of defendant's contentions and against those of the plaintiff, and rendered judgment accordingly, from which judgment plaintiff prosecutes this appeal.

The evidence, without contradiction, shows that under date of January 18, 1912, the plaintiff received a patent from the United States government to the following described tracts of land in Carbon county, state of Utah:

"The west half of the southwest quarter and the southeast quarter of the southwest quarter of section 26, and the northeast quarter of the northwest quarter of section 35, in township 15, south of range 8, east of the Salt Lake Meridian, Utah, containing 160 acres."

The evidence also shows without contradiction that Bernard R. McDonald and Mark P. Braffet, the predecessors in title and interest of the defendant herein, received a conveyance of the south one-half of section 27, township 15 south, range 8 east, Salt Lake Meridian, in Carbon county, Utah, from the state of Utah, and that the plaintiff and defendant, respectively, are and were, at the time of the commission of the acts complained of, the owners of these respective tracts of land.

During the year 1914 the plaintiff erected a store and other buildings on his land about 600 or 700 feet north and slightly to the east of the southwest corner of section 26, in said township and range. The lands of both the plaintiff and defendant are located near the mouth of the Miller Creek Canyon. Just prior to the construction of the plaintiff's store coal mines were opened to the west of plaintiff's land, and people settled in the immediate vicinity of said coal mines until at the time of the commission of the acts complained of several hundred people were residing in these coal camps within a distance of 2 or 3 miles from the plaintiff's store building.

The uncontradicted evidence also shows that during the early settlement of the communities of Cleveland, Huntington, and Price a road was used by the settlers up Miller Creek Canyon for the purpose of hauling lumber, logs, sawdust, and, in later years, coal, and also for hauling supplies to ranches and sheep herds which were up in said canyon, and that such road was used continuously for more than 30 years prior to the commission of the acts complained of, and the evidence of witnesses for both plaintiff and defendant is to

the effect that only one road led up into the canyon prior
to the opening of the coal mines and settlement of the adjacent
territory in about the year 1910. At the same time the coal
mines were opened up and the mining camps settled a rail-
road was constructed into the coal camps, and the construc-
tion of the railroad and the building of homes of necessity
interfered with the wagon road that had theretofore gone up
into Miller Creek Canyon.

At the time of the trial and the commission of the acts com-
plained of the plaintiff was renting his store and other build-
ings to tenants who relied in part upon customers from east
and west Hiawatha, some 2 or 3 miles up the canyon, for
trade. The old road was the most direct route to these min-
ing camps. A road 3,500 feet longer than the old road
claimed by the plaintiff, from plaintiff's store building to west
Hiawatha, was in use generally by the public at the time of
the obstruction of the road in controversy. It was being
compelled to use the longer and more circuitous road, and the
inconvenience and consequent loss in the rental value of plain-
tiff's property constitutes the basis of plaintiff's complaint.

The exact location of this wagon road is in dispute. It is
conceded by both parties, and all of the evidence shows, that
the road in use prior to the construction of any railroads
ran generally in an easterly, or southeasterly, and westerly,
or northwesterly, direction. The plaintiff contends that the
road ran immediately south of his store building, which is
known as the Black Hawk Mercantile Company's store, and
thence up the canyon in a westerly direction, while the defend-
ant contends that the old road was some 700 or 800 feet south
of plaintiff's store, and ran in a northwesterly direction up
the canyon.

If the course of the old road was located as contended for
by the defendant, it would be somewhere between 600 and
800 feet south of the point where the obstruction was placed;
whereas, if the course of the old road was located as contended
for by the plaintiff, the obstruction complained of would be
on a detour used since the fall of 1914 and about 200 feet
north of the old road; but in either event the construction
was on land the title to which was in the defendant.

Some question is raised in the briefs of respective counsel as to whether or not the placing of the obstruction on the detour, which had been used since 1914, and ran north some 200 or 300 feet from what plaintiff claims to be the old road, would be such a deviation from the old road claimed by the plaintiff as to entitle the defendant to be within its rights in closing the same. Suffice it to say that the trial court, as is clearly shown by its findings of fact, did not consider this phase of the case, but found the facts upon the main issue, that is, the location of the old road, and which findings were in favor of defendant's contention. In the writer's opinion, it will not be necessary to consider the matter of the detour in arriving at a proper determination of this case, and, in any event, it would appear that the defendant claims the right to obstruct the old road, as claimed by plaintiff, at places other than the detour.

There seems to be no dispute, and the court found, that the defendant corporation placed guards and obstructions across the road, claimed by the plaintiff to be a public highway, in the winter of 1919, and that it claims the right to continue such obstruction, not only at the detour, but on the other parts of what plaintiff claims to be the old road. The question to be determined is, Did it have such a right? If the trial court's findings of fact as to the location of the old road are to be sustained, there is no serious or tenable contention that the judgment could be otherwise than as rendered.

Numerous witnesses testified in this case. The plaintiff called 25 and the defendant 14. Not all of these witnesses testified as to the location of the road in controversy up Miller Creek Canyon, but the greater number of them did testify as to some fact connected with the location of the old road. To set out in detail the testimony of all, or the greater number of these witnesses would be to extend this opinion to needless length, and would serve no useful purpose. The witnesses who testified as to the location of the old road, on the part of plaintiff, with the exception of the witness S. R. Gordon, gave evidence tending to show the location of the road, as contended for by plaintiff, and many of them were quite positive

that plaintiff's contention was correct. Defendant's witnesses, as well as S. R. Gordon, who was called by plaintiff, gave evidence tending to support defendant's contention, and many of them were equally positive that the old road was located as contended for by defendant. In a case such as this it is not at all unexpected to find witnesses honestly mistaken as to the location of an old road running over an open, unsettled, and, for the most part, unfenced flat covered with sage brush. This is particularly so after the lapse of years and the construction of a railroad that interferes with the usual course of travel. All of the witnesses, however, seem to agree that prior to the interference of the course of the old road by the construction of a railroad there was only one road up the canyon, and that the travel for the most part followed the course of this road. The road seems to have been quite well traveled, and a number of the witnesses located portions of the old road with respect to the topography of the country. It was not until in recent years that any material changes were made in the road. At the conclusion of the evidence the trial judge, upon stipulation of counsel for the respective parties, went over the lands concerning which evidence was offered. That the trial judge had the right to apply his observations thus made to the evidence offered seems to be well settled whenever the matter has been before the courts, and, in reason, the law could not well be otherwise. It seems to the writer that this is a case that comes squarely and peculiarly within the oft-expressed opinions of this court that the findings of fact made by the trial judge in an equity case will not be disturbed, unless it is made to appear that such facts so found are against the preponderance of the evidence. In this case there is a direct and irreconcilable conflict in the evidence. The trial judge not only had the opportunity of observing the witnesses and their demeanor while on the witness stand, but he had the additional and not less important opportunity of comparing the facts testified to by the various witnesses with an inspection of many of the facts concerning which evidence was offered, as shown upon the ground. A number of witnesses testified that deep ruts were worn in the soil and rocks where the old

road was located. While it is true that some time had elapsed since the old road was interfered with, it is reasonable to suppose that indisputable evidence of the course of the old road which has been used for more than 30 years still existed upon the ground, and that the trial judge saw and considered the same in arriving at his conclusions. The writer is clearly of the opinion that the finding of the trial court, as to the location of the course of the old road, is amply supported by the evidence, and that the same should remain as found.

From what has been said it follows that plaintiff's assignment of error that the location of the old road, as found by the trial court, is not supported by sufficient evidence and is contrary to the preponderance of the evidence should be decided against plaintiff's contention.

The trial was had upon the issue of the location of the old road, and for the most part the arguments of counsel in their respective briefs are confined to this question. The trial court found, however, that the road claimed by the plaintiff was constructed by the defendant and was first traveled in the fall of 1913, and the detour in the fall of 1914, and that they were in general use by the public from the date when first traveled up to December 15, 1919, when it was effectually barricaded and obstructed by the defendant. Some question, however, is raised by the briefs of counsel as to whether or not the acts of the defendant in constructing and permitting the use of the road, as found by the trial court, did not constitute a dedication. Counsel for the plaintiff assume that the defendant was responsible for the closing of the old road, regardless of where it was located, and, having closed the old road and opened a new one, it should not be permitted to now contend that the new road as found by the trial court to have been constructed and used between the fall of 1913 and the winter of 1919 was not dedicated as a public road. The difficulty with this contention is that there is absolutely no evidence that the defendant had anything to do with the obstruction of any road, except in the barricading of the road in December, 1919. The evidence all shows, and the court found, that the Utah Railway Company, in 1913, obstructed

the old road, and there is nothing in the evidence tending to show that the defendant has any relation to the Utah Railway Company. In the writer's opinion there is not sufficient evidence to support a finding that the new road was dedicated by the defendant as a public highway, either under the common law or under the provisions of section 2801, Comp. Laws Utah, 1917. It may further be observed that, conceding a road once existed over defendant's land, no court, so far as the writer is aware, has gone so far as to hold that, when a road is obstructed by a person other than the owner, such owner is under any obligation to provide a new road across his land some 600 to 800 feet distant from the old road.

The plaintiff, having failed in his contention as to the location of the old road and his right to use the road in question, disposes of the case, and it is not necessary to consider plaintiff's other assignment of errors.

For the reasons stated, the judgment of the trial court should be, and the same is affirmed. Defendant to recover costs.


WEBER, C. J., and CHERRY, J., concur.


THURMAN, J., being disqualified, did not participate herein.


FRICK, J. (concurring). In view that there is a radical difference between the conclusions of Judge HANSEN, to whom this case was assigned to write the opinion, and Mr. Justice GIDEON, I feel it my duty to state my reasons for my concurrence with the writer of the prevailing opinion, although under the circumstances I do so with some reluctance.

I shall not attempt to add anything, nor could I do so, to the very lucid statements of Judge HANSEN. In view, however, that Judge HANSEN and Mr. Justice GIDEON differ not only with respect to what the evidence shows but also with respect to the effect that should be given to it, I shall take the liberty of referring to the original bill of exceptions

wherein all of the evidence produced before the trial court is certified to this court.

Mr. Justice GIDEON, in support of his conclusions, refers to a certain map made by one Mr. Turner, a witness for plaintiff, and much importance is attached to this so-called official map. I have carefully read all of the evidence and all the proceedings as they are certified to this court, and I cannot find anything in the record from which it can be inferred that the map referred to was considered as evidence either by the court or by any of the attorneys on either side of the case. The record clearly shows this: Plaintiff's counsel had identified as Exhibit A what Mr. Turner called an enlarged copy of a part of what Mr. Justice GIDEON refers to as an official map, and, after doing so, said: "I offer it in evidence." Counsel for defendants said: "For what purpose?" Plaintiff's counsel replied: "To show the geography (topography) of the country." Defendant's counsel then said: "We object to it for the purpose of proving any facts." Plaintiff's counsel replied: "We offer it for the purpose of illustrating the testimony." Defendant's counsel said: "For that purpose there is no objection." The court then said: "It will be received for that purpose at this time." There the matter rested until plaintiff's counsel, later in the proceedings, produced what was identified as plaintiff's Exhibit B. Exhibit A, Mr. Turner said, was merely an enlargement of Exhibit B. Exhibit B is what Mr. Justice GIDEON refers to as an official map. Not much was said about this Exhibit B at the trial except that Mr. Turner said that the highway shown on plaintiff's Exhibit A, to which reference has been made, was "approximately in the same place at that time [1910] as shown upon this map." Exhibit B. Afterwards, on cross-examination, Mr. Turner was further questioned respecting his source of information in compiling or making Exhibit B. When he was asked when he had made "the survey from which the roads were placed on the" Exhibit B, he said: "I made no survey; I put the roads on just from such notes as there were in the county surveyor's office at that time and other documents showing the roads as

they were placed there on the map.'' He further said: ''I gathered such information as I could from the clerk's office and the surveyor's office.'' When he was asked whether the information he obtained was ''a matter of record,'' he said: ''No, I presume not.'' When he was asked whether the road as it appears on Exhibit B, was in the same place as it appears on Exhibit A, he answered: ''Yes; I would say approximately, though not accurately.'' He then said that there were variant limits to accuracy. Nowhere, however, was it contended at the trial that either Exhibit A or Exhibit B was considered, or that they were to be considered, as evidence, but merely as illustrative of the statements of the witnesses respecting the location of the road in question. If either or both of the maps had been admitted as evidence, it would have constituted manifest error in view of the sworn testimony appearing in the original bill of exceptions. Then again, it is apparent from the exhibits themselves that no reference is made thereon to any permanent objects or monuments, nor are there any courses or distances given, although the alleged road does not follow any section line or any straight course. Therefore, the so-called map is no more than a tracing on paper indicating the general course and direction of the road in question without any pretense that the map correctly shows the location of the road or any particular part thereof on the surface of the earth. That such was what the maps were used for is made more apparent still from the fact that plaintiff's counsel offered at least three or four other so-called maps, or ''sketches'' made by different witnesses showing the alleged direction and location of the road in question. If Exhibit B were an official map upon which the location of the road in question was correctly indicated, why would plaintiff's counsel cast doubt upon the only official documents he had by presenting other maps on which the location of the road in various ways and to a greater or less extent varied from the location as indicated on the so-called official map or Exhibit B? All of the maps, plats, and sketches, by whatever name they may be called in the record, and by whomsoever produced at the trial, were offered and

considered for the sole purpose of illustrating the statements
of the several witnesses with regard to the location and direc-
tion of the road in question.

After carefully reading the evidence, I have become con-
vinced that, while plaintiff produced the greater number of
witnesses and their statements considered by themselves are
persuasive, yet there are some facts and circumstances testi-
fied to by defendant's witnesses which, to my mind, lend
great weight to their statements concerning the location and
direction of the old road, which is the only road in question
here. The facts referred to relate to what, by all the witnesses
on both sides, are called dugways. In that connection one of
plaintiff's witnesses testified that he and his son had worked
on the road in question for Carbon county in 1912, and that
he received pay from the county for doing the work. The
minutes kept by the county commission of Carbon county were
introduced in evidence, showing that the witness in 1912 was
allowed $50 for work done on the county roads of Carbon
county. On cross-examination of this witness, however, it
developed that the work was done at or near, a dugway
where a bridge was constructed and on which the witness said
he worked. All that the witness said, and all that the record
shows in that regard, may therefore be true, and yet the road
in dispute may have been at a point other than as claimed
by the plaintiff; that is, it may have been further south, just
as the district court found. If the statements of defendant's
witnesses respecting the location of the so-called old dugway
are correct, then the old road must have been farther south
than plaintiff and his witnesses contend it was, and the proof
of the work done by the witness and his son in no way helps
the matter. If it was as far south as defendant's witnesses
said it was, and as found by the trial court, then the defend-
ant has not obstructed a public highway. Whether the de-
fendant's witnesses or the plaintiff's witnesses were correct in
their statements concerning the location of the dugways was
a matter which the trial court, in viewing the premises as re-
quested by both parties, had to determine. These dugways
were more or less permanent objects or monuments upon the

ground, and hence afforded a means for determining whether
the statements of plaintiff's witnesses or those of defendant's
witnesses were correct. In addition to that, defendant's wit-
nesses testified to a certain fence, which they said was con-
structed by a man named Wilson in 1884. A number of wit-
nesses stated that the old road ran south of this fence, and
that the evidences of the existence of the fence and the loca-
tion of the old road south of it were still visible upon the
ground. Plaintiff's witnesses, or, at least, some of them,
denied both the existence of the fence and the location of the
road as far south as the alleged fence. The trial judge thus
again was afforded an opportunity of determining which ones
of the several witnesses were correct.

The foregoing are matters that this court, or any member
thereof, is powerless to pass upon. If, therefore, we keep in
mind the fact that the trial court in cases of conflicting state-
ments by the witnesses can better determine the weight to be
given to those statements by observing the witnesses and by
hearing and seeing them testify, how much greater opportun-
ity has that court of reconciling those conflicting statements
and of determining the effect that shall be given to them in
a case of this kind where the court obtains an actual view of
the locus in quo and observes the monuments and evidences
upon the ground and then determines the weight that shall
be given to the conflicting statements. If, in such cases, our
judgment shall prevail, upon what is it based? Necessarily,
upon the mere naked statements of the witnesses and without
any means of determining who told the truth. Where, there-
fore, the trial court is requested to view the premises, and
where, as here, the existence of objects is asserted on the one
hand and disputed upon the other, and the court, in viewing
the premises, must necessarily see those objects and from them
determine which one of the two conflicting statements is cor-
rect, this court cannot interfere, without taking upon itself
the responsibility of doing so without just cause. True, we
have said that in equity cases the parties are entitled to our
best judgment based upon the evidence. In connection with
that, however, we have also frequently said that in case the

evidence is in conflict we must constantly keep in mind the advantages of the trial court in determining the credibility of the witnesses and the weight to be given to their statements.

There is still another reason, however, why this court should not disturb the findings or judgment in this case unless it is made to appear that the findings and judgment are clearly against the weight of the evidence when considered in connection with the fact that the trial court inspected the entire country over which the alleged road is located. Our statute in plain and unambiguous terms provides how obstructions shall be removed from public highways. A plain, speedy, and adequate remedy is afforded to everyone whose passage is obstructed upon a public highway. In this case it is very clear from the testimony of one of the county commissioners of Carbon county, who was a witness in the case, that the place where the obstruction was placed is not considered as being a public highway. Neither, so far as the record is concerned, has the public complained. Certainly no public official has made any complaint. If, therefore, a citizen in a private action can have the courts declare that to be a public highway which the public officials refuse to so recognize, then can such citizen compel the public to maintain two public highways where only one is required and where but one is contemplated? True it is that, if a public highway exists, any citizen may complain whose rights are affected in a manner different from those of the general public. Where, however, as here, no one seems to complain, and the public officials seem to regard the locus in quo as not constituting a public highway, the courts should at least require clear proof that the place which is obstructed constitutes a public highway.

Moreover, the plaintiff is not excluded from the highway. The evidence in the record is that the difference in following the present highway and the one that is alleged to be obstructed is about 3,200 feet, or about three-fifths of a mile, in an open sparsely settled country. True, the plaintiff contends that there is a place in the new highway that is ob-

structed by a trestle. If that be so, the plaintiff has a speedy and adequate remedy to have the trestle widened or removed since that would in itself constitute an obstruction.

For the reasons stated, I feel constrained to concur in the conclusions reached by Judge HANSEN.

GIDEON, J. (dissenting). I am not unmindful of the consideration due and that should be given to the findings of fact made by trial courts in equity cases. Nevertheless, under both the Constitution and statutes of this state, it is the duty of this court to review such findings, and, if satisfied that they are contrary to the weight of the evidence, make or direct other and different findings. A litigant in an equity case is entitled to the judgment of this court on questions of disputed facts.

In my judgment the evidence in support of plaintiff's contention in the instant case is much more convincing and therefore of greater weight than is the evidence offered in support of the contention of defendant.

That a public highway through Miller Creek Canyon had existed for many years prior to the institution of this litigation is conceded. The dispute between the parties to the action is as to the exact location of such highway.

The only public record that throws any light upon this issue supports plaintiff's claim.

A Mr. Turner was a witness in the case. By profession he is a civil engineer, and was county surveyor of Carbon county from 1908 to 1912. During his term of office (in 1910), by direction of the county commissioners, Turner prepared a map showing the location of the public roads in the county. The map prepared by him was approved by resolution adopted by the county commissioners of Carbon county on December 30, 1910. This witness testified that he prepared the map from all the records then available in the county surveyor's office and from other public records. Furthermore, he testified that he had personal knowledge of the location of this highway at the time of preparing the map; also that in the years immediately following the preparation of the map, while doing work for others, he became more familiar with the

exact location of this highway. This map locates the highway approximately along the route contended for by plaintiff.

There is no testimony in the record that rebuts or overcomes the presumption that ought to attach to this authorized official map.

In addition, other witnesses testified for the plaintiff whose testimony is entitled to great weight. One of those witnesses, a Mr. Anderson, owned and operated a sawmill in the canyon from 1890 to 1895. During that time he was actively engaged in hauling logs, lumber, and railroad ties out of the canyon. He had no doubt of the location of the old highway. In the very nature of things he would know every ravine and wash along the route over which he was transporting these heavy loads.

Peter Anderson, another witness for plaintiff, hauled timber over this same road in 1896. He had no doubt as to the location of the road.

Another witness, a Mr. Frandson, herded sheep all over that country in about 1900. He was familiar with the canyon and bench lands on either side. His testimony is that the old highway was located as now claimed by plaintiff.

The plaintiff constructed his building in 1911 and 1912 at great expense. The building was constructed for mercantile purposes. The road was there and being traveled at that time as the main highway through the canyon. It would be most unnatural to construct a business building in a canyon otherwise than upon the road that was recognized as the public highway at the time of construction.

This road was one of the early pioneer trails up that canyon. In fact, it was the only trail up the canyon. In locating that road it may be reasonably presumed that the pioneers followed their usual custom and selected a road offering the least resistance. The topography of the country, as described by the various witnesses, lends very convincing support to plaintiff's claim and negatives the probability of any road being established along the way now contended for by defendant. The writer of the prevailing opinion says:

"All of the witnesses, however, seem to agree that prior to the interference of the course of the old road by the construction of a railroad there was only one road up the canyon, and that the travel for the most part followed the course of this road. The road seems to have been quite well traveled, and a number of the witnesses located portions of the old road with respect to the topography of the country."

I fully agree that the testimony abundantly supports that statement. It being thus conceded that there was one road, and only one road, through that canyon, there is not, in my judgment, any convincing proof that the road was located at any other or different place than that claimed by plaintiff.

It seems to have been a part of the theory of the defense that there might have been roads all over that canyon, and hence no one route could be claimed to have been an established road. The statement quoted from the prevailing opinion effectively dispels that contention.

Some stress is given to the fact that the trial judge personally visited the vicinity where the location of the old road is in dispute. Ordinarily, the personal observations and inspections of a trial court should be and are entitled to much weight. However, long since the establishment of the roadway through that canyon mining communities have grown up in different parts of the canyon. Necessarily, new routes of travel between those communities and villages have been established. By reason of those new lines of travel any evidence of the old road wherein it might differ from the other roads of necessity does not now exist.

It may be conceded that certain witnesses who testified for defendant had known this canyon for a great many years, but an examination of their testimony will show that they had no occasion to be impressed with the particular location of the roadway as did the surveyor who was charged with the duty of preparing a road map of the county, nor as did the other witnesses some of whom hauled heavy loads of timber out of the canyon and others of whom herded sheep in the canyon and surrounding country. A number of defendant's witnesses knew nothing of the canyon until years after plaintiff constructed his building adjoining the highway.

I find nothing in this record to justify any claim that there had been an abandonment of the old road located as claimed by plaintiff.

It is conceded, and the court so found, that there was a public highway through this canyon. To permit the defendant to obstruct this highway, as admittedly it has done, is virtually to close the old public highway without establishing a new one through the canyon. The proof is abundant that the county commissioners never exercised or attempted to exercise any jurisdiction over the so-called "new road." There are placards along this road announcing the same to be a private way.

There is in the briefs of both plaintiff and defendant a sketch showing the relative locations of the roadway as claimed by the respective parties to this litigation. It may have no significance, but on the sketch in plaintiff's brief appears on this new roadway a square designated "defendant's store," while on the sketch in defendant's brief the same square is modestly called "a store." Long after this highway was established coal mines were discovered, and they have been developed in this canyon. As a result small towns or villages of miners and their families have grown up at different places in the canyon. Plaintiff's store was so constructed that it could serve these communities with merchandise as well as the general public traveling along the highway. To now obstruct the highway passing his place of business, as had been done by defendant, and which the trial court held it had a right to do, and which holding this court affirms, is, in effect, to confiscate, to a very large extent, the building which plaintiff constructed, relying upon the fact of the existence of the highway.

Viewing the facts as in my judgment they are established by this record, notwithstanding the views of my Associates, I cannot bring myself to agree to an affirmance of the judgment. That judgment in effect deprives a community of a public highway. It works a grave injustice to the plaintiff. To grant plaintiff's prayer would not work any inconvenience to any one, nor would it make the travel up and down that canyon any more dangerous than it is along other routes.

Since preparation of the foregoing outline of my views respecting the weight of the evidence found in the record on appeal in this case, Mr. Justice FRICK has, in a written opinion, concurred in the views of Judge HANSEN. By reason of what is said in that concurring opinion I have made further examination of the records. That examination confirms my first conviction that the findings of the trial court should not prevail, and to approve the judgment results in an injustice by closing the only public highway that runs through the canyon in question, as well as an injustice to appellant. Numerous other witnesses testified, whose testimony, in my judgment, is entitled to great weight in determining the questions of fact at issue in this case. I shall here, however, refer to the testimony of only one additional witness, and that for the purpose of corroborating the statement that the public records of Carbon county furnish very convincing proof that the road in question was located as claimed by appellant. Mr. Charles Clawson was a witness for the plaintiff. He was 68 years old, and stated that he had lived in that part of the state since 1884 and was familiar with Miller Creek Canyon; that he owned a ranch located within 5 miles of the Black Hawk Mercantile Company's store, that store being the property of appellant. The witness further stated that in the year 1912, under authority of an action of the board of commissioners of Carbon county, he and his sons did work on this road along the line now claimed by the plaintiff. The work was authorized by a resolution of the county commissioners at a meeting held November 9, 1912. The work was done pursuant to that resolution, and a county warrant was drawn in favor of the witness on December 12, 1912, for $50, for the work so done.

Mr. Clawson is the witness referred to in the opinion of Mr. Justice FRICK as having worked upon the road in question, with his son, in the year 1912, but concludes that it appears from the cross-examination that, although it might appear from what the witness said that the witness was testifying truthfully, nevertheless it did not establish plaintiff's contention. I do not so understand the witness' testimony.

This witness traveled that road every year from 1884 to 1907. He testified that in the year 1919 or 1920 he had occasion to go over the road to bring a son, who was sick, home from the mine. He stated he knew the location of the corner of sections 26 and 27, 34, and 35; that the road he traveled was north of this common corner 200 or 300 yards. That would bring the location of the road along where appellant's buildings are now situated. The witness stated that the road he traveled was about 1 rod from the present location of appellant's store. In fact, there was no doubt in this witness' mind as to the location of the road in question. His means of information, the fact that he had worked upon the road, that he had traveled it all those years, and was familiar with it until 1920, ought to be very conclusive evidence as to the location of the road.

The county records authorizing this witness to work upon that public road, the action of the commissioners in drawing a warrant to pay for the work done, and the witness' testimony as to where the work was done for which the warrant was drawn, is additional evidence which in my judgment warrants the statement made in the early part of this opinion that the only public records of Carbon county that throw any light upon the location of this road support plaintiff's claim. I therefore dissent.

## On Petition for Rehearing.

HANSEN, District Judge. A petition for a rehearing has been filed by the plaintiffs. All of the matters covered by the petition for a rehearing were argued and considered at the time the case was before this court originally, excepting that it is contended for the first time in the petition for rehearing that, even though plaintiff cannot recover judgment to the effect that a public road existed at the place contended for by him, none the less this court should find that a road existed where the witnesses for the defendant testified it was located. The action is based upon the theory that a public road was obstructed where the plaintiff contended a

public road existed.   Under the pleadings there is no    2
contention that any public road was obstructed other
than the road contended for by the plaintiff and this having
been decided adversely to plaintiff's contentions, it would be,
in the opinion of the writer, going beyond the pleadings, as
well as the evidence, to pass upon the question of the exist-
ence of a public road at some other place.   This question is
not before this court for review, and was not, and cannot be
determined by this court in this action.   The mere fact that
plaintiff has failed in this action does not preclude him
from taking any action that he may desire for the obstruction
of some other road, and this court would be going beyond its
power of review to pass upon the question of the existence
or nonexistence of some other road.   For these reasons the
petition for a rehearing should be and accordingly is denied.

FRICK and CHERRY, JJ., concur.

GIDEON, C. J.   In my judgment a rehearing should be
granted, or the district court should be directed to enter a
decree granting plaintiff the relief sought.

The term of office of Hon. A. J. WEBER, who was Chief
Justice, expired before petition for rehearing was disposed of.